USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-10-10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **ROBERT WILLIAMS,** | : | |
| | : | |
| Petitioner, | : | **REPORT AND** |
| | : | **RECOMMENDATION** |
| - against - | : | |
| | : | **09 Civ. 5169 (DAB) (RLE)** |
| **ROBERT ERCOLE,** | : | |
| | : | |
| Respondent. | : | |

**To the HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Petitioner Robert Williams, a New York State prisoner at Green Haven

Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). Williams

delivered the Petition to prison officials on April 9, 2009, and it was received by the *Pro Se*

Office in this District on June 3, 2009. After a jury trial, Williams was convicted of attempted

murder in the second degree, N.Y. Penal Law §§ 110/125.25[1], assault in the first degree, N.Y.

Penal Law § 120.10[1], robbery in the first degree, N.Y. Penal Law § 160.15[4], and criminal

possession of a weapon in the third degree, N.Y. Penal Law § 256.02[4], and was sentenced as a

second violent felony offender to determinate, concurrent terms of imprisonment of eighteen

years for attempted murder, fifteen years each for the assault and robbery convictions, and seven

years for possession of a weapon.

Williams contends that his incarceration violates the United States Constitution because:

(1) he was deprived of a fair and impartial jury because three jurors discussed the case before all

the evidence had been presented, and because there was no court inquiry regarding whether other

jurors had been prejudicially influenced; and (2) he received ineffective assistance of counsel

receiving a callout.

Williams's Petition was filed on April 9, 2009. Ercole contends that the filing was beyond the one-year limitations period set by the Antiterrorism and Effective Death Penalty Act. (Resp't's Decl. ¶ 14.) *See* 28 U.S.C. § 2244(d)(1)(A). Williams argues that his Petition was timely because the period of limitations began on the date which the factual predicate of his claim could have been discovered through the exercise of due diligence, which he maintains is when he received a letter from his grandmother that detailed several jurors discussing his case during the trial. (Pet'r's Reply Mem. at 2.). Alternatively, Williams argues that the existence of extraordinary circumstances entitle his Petition to equitable tolling. (*Id.* at 5.)

### III. DISCUSSION

**A.     Williams's Petition is Untimely Under § 2244(d)(1)**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]," that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (*quoting Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). However, the statute of limitations is tolled while state court relief is pending. *See* 28 U.S.C. § 2244(d)(2); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*), *cert. denied*, 531 U.S. 840 (2000), and when the post-conviction motion is filed until leave to appeal is denied. *See Rodriguez v. Portuondo*, No. 01 Civ. 547 (GEL), 2003 WL 22966293, at *1-2 (S.D.N.Y. 2003); *see also Carey v. Saffold*, 536 U.S. 214, 216 (2002).

Williams's conviction became final on January 28, 2007. The one-year limitations period

because his counsel did not ask the court to conduct an inquiry of the remaining jurors.

(Amended Petition pursuant to 28 U.S.C. § 2254 ("Pet.").) Respondent Robert Ercole has filed a

motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28

U.S.C. § 2244(d), contending that Williams's Petition should be dismissed because he had failed

to commence the proceeding within the period of limitations set forth in 28 U.S.C. § 2244(d)(1).

For the reasons set forth below, I recommend that the motion be **DENIED**.

## II. BACKGROUND

### A.    Factual Background[1]

During Williams's trial, Juror Number Four was removed from the jury after she made

statements to the court indicating that she had become prejudiced towards Williams's defense

counsel. (Resp't's Mem. of Law in Supp. Mot. to Dismiss ("Resp't's Mem."), Ex. 3 at 325.) In a

meeting with the court, Williams's counsel asked that the juror be disqualified because she could

not be impartial. (*Id.* at 322.) The prosecutor stated that he would "leave it to [the judge's]

discretion." (*Id.* at 322-23.) The court disqualified her and substituted an alternate juror, finding

that it was doubtful that the dismissed juror could set aside her prejudice toward defense counsel.

(*Id.* at 323-24.) Williams was convicted and judgment was entered on October 1, 2003. (Resp't's

Decl. in Supp. Mot. to Dismiss ¶ 4.)

While incarcerated, Williams wrote a letter dated July 23, 2007, to his trial counsel

---

[1]This Court does not have the entire transcript of Williams's trial. The factual recitation herein is based upon the submissions by Williams and Ercole to this Court, which include the submission from William's direct appeal to the New York Supreme Court, Appellate Division, First Department. 28 U.S.C. § 2254, Rule 5 ("If a transcript cannot be obtained . . . a narrative summary of the evidence [may be submitted]."); *see Elliott v. Kuhlmann*, 2004 WL 806986, at *2 (S.D.N.Y. April 9, 2004); *Douglass v. Portuondo*, 232 F. Supp. 2d 106, 109 n.1 (S.D.N.Y. 2002). This Court finds that the current record suffices to resolve the present motion, particularly since the facts are not in dispute.

outlining the claims that he intended to raise in a motion pursuant to New York Criminal Procedure Law § 440.10. (Resp't's Reply Mem. in Supp. Mot. to Dismiss ("Resp't's Reply Mem."), Ex. 3.) Williams asserted that the court committed reversible error when it did not question other jurors after dismissing Juror Number Four. (*Id.*) In a letter dated November 23, 2007, Williams's grandmother, Mary Williams, wrote that Williams's sister had urged her to write to explain that she had overheard three jurors talking in an elevator during the lunch recess, and that two of them stated that Williams's attorney was making Williams "look guilty." (Resp't's Reply Mem., Ex. 2 ¶ 5.)

**B.      Procedural Background**

On June 27, 2006, the Appellate Division denied Williams's claims on appeal. *People v. Williams*, 816 N.Y.S.2d 685 (App. Div. 2006). On October 30, 2006, the Court of Appeals denied his application for leave to appeal. *People v. Williams*, 824 N.Y.S.2d 616 (Table) (App. Div. 2006). His motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, (Reps't's Mem., Ex. 3), was denied on November 25, 2008. (Mot. to Dismiss, Ex. 7.) On March 12, 2009, the Appellate Division, First Department, denied Williams's application to appeal the denial of the § 440.10 motion. (Mot. to Dismiss, Ex. 8 at 1.) Williams received notice of that denial on March 20, 2009, and the same day submitted a request for access to the law library. (Pet'r's Aff. in Resp. to Resp't's Mot. to Dismiss ("Pet'r's Aff. in Resp.") at ¶¶ 3-6.) Williams twice inquired about the status of his library access before he was scheduled for library access on April 7, 2009, via a computer program Green Haven employs to manage inmate access to the library. (*Id.*) The program is designed to provide equal access to the library and issues approximately 2,000 callouts each month. (*Id.*) An inmate cannot attend the library without

3

was tolled on January 2, 2008, the 339th day of the one-year filing allowance, when Williams

filed his § 440.10 motion. It remained tolled while his motion was pending before the Appellate

Division. When the Appellate Division denied Williams's application to appeal the denial of his

§ 440.10 motion on March 12, 2009, tolling ceased, leaving Williams 26 days in which to file a

timely petition. Williams received notice of the denial 8 days later on March 20, 2009. On April

7, 2009, the one-year period of limitations expired. Two days later, Williams handed his habeas

petition to prison guards and it was considered filed under the prison mailbox rule on April 9,

2009. *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001), *cert. denied*, 534 U.S. 886 (2001).

Because Williams did not file his petition until April 9, 2009, 2 days after the one-year filing

provision had elapsed, his habeas petition is untimely.

**B.      Williams's Petition is Not Timely Under § 2244(d)(1)(D)**

Williams argues that his Petition is timely because the one-year period in which to file

began on November 23, 2007, the date on which the facts of his claim became known. Under

AEDPA, where there is newly discovered evidence the one-year period starts on "the date on

which the factual predicate of the claim or claims presented could have been discovered through

the exercise of due diligence," if that date is later than the date the conviction became final. 28

U.S.C. § 2244(d)(1)(D). That is, the discovery of new evidence can actually "restart" the one-

year period if such evidence forms the factual predicate for the claims and could not have been

discovered earlier through due diligence. *Smith*, 208 F.3d at 17.

"Newly discovered evidence is, by definition, incapable of discovery through counsel's

due diligence before or during trial. Evidence in existence at an earlier date, though perhaps

unknown to the petitioner, cannot later be described as newly discovered." *Hector v. Greiner*,

5

No. 99 Civ. 7863, 2000 U.S. Dist. LEXIS 12679, at *3-4 (E.D.N.Y. 2008) (citations omitted);

*see United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000); *Adams v.* Greiner, 272 F.

Supp. 2d 269, 273 (S.D.N.Y. 2003). "In the absence of a showing of good cause, courts will

reject assertions that evidence is 'newly discovered' if that evidence existed prior to the time a

petitioner's underlying conviction became final." *See, e.g., Middlemiss*, 217 F.3d at 123.

Williams contends that the letter from his mother constitutes newly discovered evidence

because he did not know of the jurors' conversation before then. This alleged conversation,

however, took place during Williams's trial, and could have been discovered by counsel through

due diligence. Neither the grandmother's letter nor the claims within it can be characterized as

newly discovered evidence. Williams, therefore, may not use the letter's date to restart the one-

year statute of limitations pursuant to 28 U.S.C. § 2244(d)(1)(D).

**C.    Williams Has Demonstrated Extraordinary Circumstances Exist That Warrant Equitable Tolling**

The "exercise of a court's equity powers . . . must be made on a case-by-case basis."

*Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). "The 'flexibility' inherent in 'equitable procedure'

enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the

relief necessary to correct . . . particular injustices.' " *Holland v. Florida*, 506 U.S. _ (2010), No.

09–5327, 2010 WL 2346549, at *12 (June 14, 2010) (quoting *Hazel-Atlas Glass Co. v. Hartford-

Empire Co.*, 322 U.S. 238, 248 (1944) (permitting postdeadline filing of bill of review)).

Summarizing the tradition of courts of equity, the Supreme Court noted, "courts exercise

judgment in light of prior precedent, but with awareness of the fact that specific circumstances,

often hard to predict in advance, could warrant special treatment in an appropriate case." *Id.*

6

AEDPA's one-year filing deadline may be tolled for equitable considerations. *Holland*, 2010 WL 2346549, at*3; *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). "In order to equitably toll the one-year period of limitations, [a petitioner] must show that extraordinary circumstances prevented him from filing his petition on time. . . . In addition, the [petitioner] seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Id.*  For the purposes of equitable tolling, an extraordinary circumstance is determined by assessing the severity of the specific obstacle vis-a-vis the prisoner's particular situation. "The proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).

Williams claims that his Petition is entitled to equitable tolling for: (1) the 8-day period between the Appellate Division's denial of his § 440.10 motion and his receipt of the decision; and (2) the 18-day period between his request to use the prison's law library and his access to it. Having reviewed the particular obstacles faced by Williams, the Court finds that, while neither period standing alone constitutes extraordinary circumstances, the convergence of these two obstacles when Williams had 26 days remaining on the statute of limitations severely compromised his ability to comply with the statute of limitation, and warrants equitable tolling.

### 1.   An 8-day delay in receiving the state court notice reduced by one-third Williams's time to file his Petition

Statutory tolling under the AEDPA, applicable when collateral state court proceedings are pending, ends on the date of the state court's ruling, rather than on the date of its receipt. *Geraci*

*v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000). However, a "prolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies can toll the AEDPA limitations period" and may warrant equitable tolling. *Diaz*, 515 F.3d at 155. In *Diaz*, the petitioner's collateral attacks had tolled the statutory one-year habeas limitations period. Upon the issuance of the state court's denial, he had over three months remaining in which to file his petition. However, the petitioner did not receive notice of the Appellate Division's denial of his § 440.10 motion until eight months after its issuance. The court ruled that that it was appropriate to equitably toll the limitations period by extending it until the receipt of the order. In announcing that the delay constituted extraordinary circumstances, the court noted that it did not intend to modify *Geraci*, which held that statutory tolling ended upon issuance of a state court ruling. *Diaz*, 515 F.3d at 155 n.2.

By contrast, Williams had 18 days remaining when he received the court's order that exhausted his state remedies for federal habeas purposes. While the 8-day delay in receiving notice is shorter than the delay in *Diaz*, the proper and particularized consideration should compare the delay with the time remaining rather than considering only the length of the delay. A delay of 26 days, for example, while considerably less that the period in *Diaz*, would have completely exhausted the time remaining for Williams. Similarly, while 8 days is not a considerable length of time in the abstract, for Williams it represents nearly one-third of the time he had remaining, and left him with only 18 days to file.

   2.   **Williams's 18-day delay to gain access to the prison's law library exhausted the time remaining to file his Petition.**

"The inability to obtain court documents due to the routine restrictions of prison life does

8

not constitute extraordinary circumstances." *Victoria v. United States*, No. 07 Civ. 7911 (SCR)(GAY), 2010 WL 234811, at \*3 (S.D.N.Y. 2010); *Davis v. McCoy*, No. 00 Civ. 1681 (NRB), 2000 WL 973752 (S.D.N.Y. 2000) (holding that prisoner's lack of access to court papers for two years does not constitute extraordinary circumstances). A claim of extraordinary circumstances will not succeed if prisoners who claim that a lack of access to documents has prevented them from filing fail to show that the documents are needed. *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (noting that a petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests [i.e., loss of legal papers] and the lateness of his filing"). *See also Lee v. Portuondo*, No. 02 Civ. 3990(SJ), 2003 WL 22173078, at \*5 (E.D.N.Y. Aug. 29, 2003) ("[P]etitioner fails to demonstrate any causal connection between the lost papers and the lateness of his filing . . . . [and] makes no effort to explain why his state criminal records were necessary [for] his petition."); *Anderson v. O'Gara*, No. 01 Civ. 5712 (WHP) (GWG), 2002 WL 1633917, at \* 5 (S.D.N.Y. July 23, 2002) (denying equitable tolling where the petitioner had not shown that his inability to obtain transcripts prevented him from filing his petition); *De La Rosa v. Keane*, No. 01 Civ. 4718 (JG), 2001 WL 1525257, at \* 2 (E.D.N.Y. Nov. 13, 2001) (denying equitable tolling because petitioner did not need to have the trial minutes in his possession to advance his claim of ineffective assistance of counsel). Williams, however, has demonstrated a nexus between his lack of access to the prison library and the delay in filing his Petition because he needed such access just to get the basic filing form.

Williams does not allege that prison officials intentionally deprived him of access to the law library or prevented him from filing his habeas petition. Instead, he acknowledges that his

9

access to the law library depended on a computer program used by Green Haven that was designed to provide inmates equal access. Williams states that he would not have been able to file the instant petition "[w]ithout attending the law library," that he "had to attend the law library to obtain the basic habeas form" and that "the only supplies that an inmate can receive from the unit officer are five sheets of paper and five envelopes per week. (Pet'r's Aff. in Resp. at ¶¶ 7-8.)

Ercole contends that "*restricted access to the law library*, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances." (Resp't's. Reply Decl. at 11 (quoting *Gant v. Goord*, 430 F. Supp. 2d 135, 139 (W.D.N.Y. 2006) (emphasis in the original).) The Court agrees that, "[i]n *general*, the difficulties attendant on prison life" may not "*by themselves* qualify as extraordinary circumstances." *Gant*, 430 F. Supp. 2d at 139 (citing *Amante v. Walker*, 268 F. Supp. 2d 154, 158 (E.D.N.Y.2003)) (emphasis added). However, here the convergence of prison "difficulties" coupled with delayed court notice created a specific obstacle for Williams, which removes his circumstances from the realm of generalities. Further, the general proposition asserted by Ercole is applicable when petitioners experience some delay attributable to prison life early in the limitations period but then fail to exercise due diligence in filing their petition after the delay has been resolved. *See, e.g.*, *Amante*, 268 F. Supp. 2d at 158, *Lindo v. Lefever*, 193 F. Supp. 2d 659, 663 (E.D.N.Y.2002). In contrast, Williams exercised due diligence because he promptly requested access to the library and filed his Petition within one day of gaining access.

Delayed access to the law library was an obstacle not within Williams's control and access to the library was necessary for him to file his Petition. The computer program, designed to give equal access to inmates, nevertheless had the effect of preventing Williams from

10

advancing his rights. The library contained all of the materials that Williams needed to file a petition. There is no indication that Williams could have requested that his callout be deemed a priority, despite his repeated requests to learn the status of his callout. Had the computer program sorted the requests in a different manner, Williams might have had earlier access and would have been able to file his Petition on time.

Alone, the lack of access may not be sufficient, but the lack of library access combined with the delayed notice completely exhausted Williams's remaining time, an event that must be described as severe because Williams effectively had no opportunity to timely file his Petition. Williams received the delayed notice but was effectively barred from doing anything about it. Because the prison's access program consumed all but 2 days of Williams's time, this alone arguably constitutes extraordinary circumstances. Combined with the delayed notice of the Appellate Division's decision, Williams meets his burden of demonstrating extraordinary circumstances.

### 3.    Williams's due diligence

Williams requested library access as soon as he received the state court's notice and promptly filed his Petition when he was granted access to the library. While Williams could have filed his Petition while the § 440 motion was pending, pursuing that course would have exposed his Petition to dismissal for failure to exhaust his claims. *See Diaz*, 515 F.3d at 156; *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982).

## IV. CONCLUSION

In this particular circumstance, Williams's obstacles were out of his control and, despite his demonstrated due diligence, operated to extinguish his rights. Williams has established

11

extraordinary circumstances that warrant equitable tolling of AEDPA's limitations period.

For the foregoing reasons, I recommend that the motion be **DENIED**, and Williams's Petition for habeas corpus be adjudicated on its merits. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: September 10, 2010**
**New York, New York**

**Respectfully Submitted,**

*(signature)*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

Petitioner Pro se

Robert Williams
DIN#-03-A-5629
Green Haven Correctional Facility
Post Office Box 4000
Stormville, NY 12582

Counsel for Respondent

Alexis Pimentel
Assistant District Attorney, Bronx County
Office of the District Attorney, Bronx
County
198 East 161st Street
Bronx, NY 10451